## Consolidated Barb Wire Company v. John W. Maxwell.

### Gen. No. 4,269.

1. ASSUMED RISK—*when question of, is one of law.* Whether or not an injured party can be said to have assumed the risk, is, usually, a question of fact, but this is not always true; when the evidence is harmonious and consistent the question whether the risk is an assumed one, becomes one of law.

2. ASSUMED RISK—*what essence of doctrine of.* The doctrine of assumed risk does not depend on the care, or want of care, of the servant, but grows out of the contract of employment or continuance in the service after knowledge of defects and without objection.

3. ASSUMED RISK—*when command of master does not defeat application of doctrine of.* The command of a master to his servant to proceed with particular work does not take the case without the doctrine of assumed risk where it appears that such servant was so experienced and skillful with respect to the particular machinery which he was directed to employ that he was able fully to comprehend and understand the dangers arising therefrom.

Consolidated Barb Wire Co. v. Maxwell.

Action on the case for personal injuries. Error to the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1904. Reversed. Opinion filed April 14, 1904. Rehearing denied October 7, 1904.

KNOX & AKIN, for plaintiff in error.

DONAHOE & McNAUGHTON, for defendant in error.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is a suit brought by John W. Maxwell against the Consolidated Barb Wire Company to recover damages for an injury sustained by him while in the employ of the plaintiff in error. The trial in the Circuit Court resulted in a verdict in favor of defendant in error for $1,000, from which $5 was remitted and judgment rendered for $995. The defendant company sues out this writ of error to reverse that judgment.

The Consolidated Barb Wire Company was engaged in the manufacture of barb wire at Joliet, Illinois. Defendant in error was in its employ as a machinist, and had general charge of all the machinery used in connection with its factory. The machinery was driven in part by water power and in part by steam. The power house was about 12x14 feet and about twenty feet high, and had three floors in it, the top floor being about thirty inches below the roof. The power from the water wheel was communicated to the sheave wheel, which is hereafter described, by means of an upright shaft, which extended from the water wheel to a point above the third floor of the power house. On the top of this shaft was a bevel wheel which meshed another beveled gear attached to a horizontal shaft upon which the cable or sheave wheel was fixed. The cable wheel was supported by two timbers 12x12 extending east and west in the power house. The cable wheel was nine feet ten inches in diameter, and had a grooved rim in which the cable ran. The cable wheel was made of iron, but the inside of the groove where the cable ran was lined with a composition made of rubber and canvas to prevent the cable from coming in contact with the metal, and to give it retaining

power.   The upper line of the cable ran through a hole in
the roof and extended across the Illinois and Michigan
canal to where the machinery was located, which was op-
erated by this water power.   The composition inside this rim
of the cable wheel had a tendency to wear away by the fric-
tion of the cable, and when this would occur in such way
as to cause the cable to run to one side of the groove it
became necessary to cut out a groove in the composition in
the center of the cable-wheel rim.

On the 27th day of March, 1898, the superintendent of
the factory asked the defendant in error to do some work
on the cable wheel at the power house, telling him that the
cable had been running bad, and telling him that he would
look up the tools necessary to do the job, and that the de-
fendant in error would find the tools lying on a certain cup-
board.   On the following morning the defendant in error
went to the factory to do the work, and on the cupboard
he found a steel tool about twenty-four inches long, two
inches wide and five-eighths of an inch thick, shaped like
a spoon, with a hole a short distance from the cutting edge
for the chips to fall through, and he also found an iron
plate five inches thick, two inches wide and fifteen or
twenty inches in length, with a hole in either end.

Defendant in error went to the cable wheel, but did not
begin work at once.   He returned to the factory and had
a conversation with Isaac Burkhart, mill foreman of plaint-
iff in error, who had charge of the mill in the absence of
Mr. Newby; Mr. Burkhart told defendant in error that the
work to be done was to cut out a groove in the cable wheel
so that the cable would run in the center of the wheel, and
Burkhart also told defendant in error that the tools which
he had were all right to do the work and go ahead.   De-
fendant in error proceeded to cut out the groove in the
cable wheel by putting the plate of iron on the pegs in the
beams that supported the wheel, and using this plate as a
rest to support the tool he used to cut the groove while he
held the other end in his hand.   The wheel was revolving
toward defendant in error, making about twenty revolutions

Consolidated Barb Wire Co. v. Maxwell.

per minute. After defendant in error had been at work for an hour and a half the point of the spoon-shaped tool caught in the composition he was cutting out, the end in his hand flew up and caught his hand between the tool and the flange of the wheel, cutting off the thumb of his left hand.

Defendant in error was an experienced machinist; he had been engaged in the business of running machinery and overseeing its operation for twenty-four years; he was employed by plaintiff in error as master mechanic because of his skill and general knowledge of machinery, and charged with the duty of looking after the machinery in this factory of which the cable wheel was a part; and the case must be determined in the light of his experience, knowledge and skill, and his relation to the work in which he was engaged at the time of the accident.

The charge in the declaration is that the injury was caused by the failure of plaintiff in error to furnish a clamp or clutch to hold the steel tool securely and prevent its being jerked out of defendant in error's hands in case the point or cutting edge got hung in the rubber, and negligently ordering and requiring the defendant in error to work in a dangerous place without sufficient and reasonably safe tools and appliances. To support the claim of an order of plaintiff in error to work in a dangerous place and without sufficient and suitable tools, the testimony of plaintiff in error as to the conversation with Newby the morning before and with Burkhart on the morning of the accident, is relied on.

The insufficiency of the appliances or tools furnished consists entirely of the alleged absence of the clutch or clamp to hold the end of the steel tool to keep it from being thrown upward when the point cut too deep into the wheel. Mr. Pierce, who was the man who had cut the groove out of this wheel four or five times previous to the accident, the last time being two months before Maxwell was hurt, says of the clamps, that he always left them in the tower house when the work was done. It does not appear from the testimony where the clamps were on the

morning of the accident, nor does it appear that either Newby or Burkhart knew they were not in the tower house where the work was to be done, and it is not shown that these clamps could be used for any other purpose or that any one would have any occasion for removing them from the tower.   Keeping in mind that the tools shown Burkhart and which he said were all right, were in fact the tools and the only tools with which the work had ever been done, when held in place by the clamp, and also the fact that the defendant in error was a skilled machinist employed as master mechanic for the purpose of repairing and keeping the machinery in order, is defendant in error relieved from the assumption of the risk incident to the work in which he was engaged at the time of the accident?

Under the state of the proofs in this record, we think the question whether the injury resulted from an assumed risk is one of law, and was properly raised by plaintiff in error's request for an instruction to direct a verdict at the close of all the evidence.   Whether or not an injured party can be said to have assumed the risk, is usually a question of fact, but this is not always true; when the evidence is harmonious and consistent, the question whether the risk is an assumed one becomes a question of law.   C. & A. R. R. Co. v. Howell, 208 Ill. 155.

The doctrine of assumed risk does not depend on the care or want of care for the servant but grows out of the contract of employment or continuance in the service after knowledge of defects and without objection.   Chicago & Eastern Illinois R. R. Co. v. Heerey, 203 Ill. 492; Cichowicz v. International Packing Company, 206 Ill. 346; Cooley on Torts, 541.

It is the theory of defendant in error that the direction of Burkhart to " Go ahead, the tools are all right," will relieve defendant in error from the operation of the rules respecting the assumption of risk, and this would undoubtedly be true, if it were not for the fact that defendant in error is shown to have such experience and skill in relation to machinery of this class that he was able fully to comprehend and understand the dangers arising from its use.

In Webster Manufacturing Company v. Nisbett, 205 Ill. 273, appellee, a blacksmith of experience, was injured by a piece of steel flying from a defective backing hammer which he was using. The evidence showed that he had complained as to the condition of the tool, and that appellant's foreman had told him to " Go ahead and use it," and he would get some one to fix it; and in the opinion of the Supreme Court in this case, it is said: " Plaintiff was shown to have had long experience in the handling of hammers of this character in his business as a blacksmith, and he must be held to have assumed the ordinary risks from the use of the one in question;" and it is also said in this case: " The rule which exempts an employee from assuming the risk where a promise to repair is made, is designed for the benefit of those engaged in work where machinery and materials are used of which the employee has little knowledge, but it does not apply to ordinary labor which only requires the use of implements with which the employee is entirely familiar." Citing Bailey on Personal Injuries, sec. 3103. Again it is said: " It is a just and salutary rule designed for the benefit of employees engaged in work where machinery and materials are used of which they have little knowledge and not for those engaged in ordinary labor which only requires the use of implements with which they are entirely familiar." It does not apply to a common step-ladder, to a spade, a hoe, an ax or a hammer, or other simple agricultural tools or implements. See Nesbett's case, *supra*, and authorities there cited.

The reason upon which the foregoing exception to the rule rests is, the simplicity of the tools is such that any one with ordinary intelligence and accustomed to their use, would be able to comprehend and understand all the dangers incident to their use; or, in other words, where from the simple construction of the appliance, and the familiarity of the servant with its use, there is no reason for presuming the master knows or could have known more of the dangers arising from its use than the servant,

the rule that the servant is not exempt from the assumption of the risk does not apply, even though the master has notice of the defect and has promised to repair. Upon reason, if an ordinary servant assumes the risk from the use of a simple appliance because he is presumed to comprehend fully the danger from its use, why should the same not apply to a skillful machinist whose experience and knowledge enables him to comprehend a more complicated appliance as fully and perfectly as the ordinary servant understands the simpler appliance?

In the case at bar, Maxwell was a master mechanic; he had worked at turning both wood and iron and had used hand tools; he had known tools to catch or hang in wood, and he says himself he knew that if the tools cut too deep they would hang, causing the end to fly up, unless the man holding it was strong enough to prevent it. With all this knowledge and experience it is discrediting his intelligence to say that he did not know the same thing was liable to happen in cutting the groove in this sheave wheel, even though he had never performed this particular work before. Having reached the conclusion that the judgment should be reversed without remanding, we make the following finding of facts:

We find as a fact the work in which defendant in error was engaged was cutting a groove in a cable wheel by means of a hand tool made and used for that purpose, said cable wheel being in motion, communicated to it by water power, making twenty revolutions per minute. We find that he was directed by plaintiff in error to go ahead and informed that the tools he had in his possession at that time were all right. We find that the tools furnished by the plaintiff in error with which to do the work were, a spoon-shaped steel tool about two feet long, two inches wide and three-fourths of an inch thick, with the cutting end rounded and sharpened, which was intended to cut out a groove in the wheel when held against the rim of the revolving wheel, and an iron bar with a hole in either end which fitted over pegs in the sills that supported

the cable wheel and formed a rest for the cutting tool. We find that these tools were suitable for the work to be done. We find that the defendant in error is a skillful machinist of twenty-four years' experience; that he had frequently used a lathe in cutting both wood and iron with hand tools; that he knew the liability of the hand tool to cut too deep into the composition he was cutting and hang, and that when it did there was danger that the other end would fly up and hurt him. We find that defendant in error was in the employ of plaintiff in error as master mechanic, and that his duties were to look after and keep in repair all the machinery of plaintiff in error, used in and about its barb wire factory, and the sheave wheel was a part of the machinery under his charge; and that he was in the line of his general employment when the accident happened.

We find that the injury to appellee occurred from an assumed risk, by virtue of his employment as a machinist and master mechanic by appellant.

The judgment is reversed. *Reversed.*

Mr. Justice DIBELL took no part in the decision of this case.