## International Packing Company v. Kasimir Kretowicz.

### Gen. No. 11,621.

1. ASSUMED RISK—*when defense of, sustained.* Where the plaintiff has worked in a particular place for a number of months and was familiar with the entire situation, he is held to have assumed the risk.

2. ASSUMED RISK—*when promise of master to repair, does not prevent operation of doctrine of.* To hold the master liable where an alleged promise of the foreman to replace an implement so simple in its use as a box used to stand on, is relied upon to fix liability, would extend the rule of *respondeat superior* beyond reasonable limits and apply it as never intended.

3. SERVANT—*when chargeable with knowledge of danger.* Where the danger is obvious to a person of ordinary intelligence, the law will charge the servant with knowledge thereof.

Action on the case for personal injuries. Error to the Circuit Court of Cook County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1904. · Reversed. Opinion filed April 5, 1905.

**Statement by the Court.** This is an action for personal injuries in which defendant in error recovered a judgment which it is now sought to reverse. He was injured in a hashing machine, used for cutting or grinding up lard. The machine consisted of a bench or table with a flat surface, said to be from four and a half to five feet in height from the floor, and standing upon legs. In the top or surface of the table was a round hole about seven inches in diameter, in which a cylindrical metal hopper of the same size was fitted, leading to the hashing machinery, which was four or five inches below the surface of the table. This machinery consisted of a revolving worm, an auger-like contrivance, connected with knives.

Defendant in error, a man thirty-five years of age, who is hereafter referred to as the "plaintiff," had, according to his testimony, been operating that machine from two to three weeks immediately prior to the accident. At a former time, when in the employ of the defendant, he had worked on the hashing machine from two to three months. The

material for hashing was cut up and brought in trucks, and thrown upon the table, and plaintiff picked up the pieces of lard and put them into the hole.    He says he piled the lard into the hole or hopper, keeping his left hand upon the pile to keep it down.    While working at the machine he stood upon an inverted box as a kind of platform, made necessary, he says, on account of the height of the table. This box was, according to his estimate, about ten inches high and twelve by eight in length and width.    It was not fastened, but was movable on the floor.    In the course of the day's work the floor and the box became slippery because of the fat which fell on them in the progress of the work.    This, however, was cleaned up when the day's work was over.    A box or barrel of salt was kept near at hand, from which one of the employees was in the habit of sprinkling salt over the box and floor.

The plaintiff was engaged in feeding the machine when he received the injuries complained of.    He states: "I was standing, and the box slipped from under my feet and I fell against the machine.    I think it turned over, because it was not under my feet.    As I stood and was feeding that way (indicating) the box tipped over."    No one else saw the accident.

The original declaration charged that it was the duty of the defendant to use reasonable care and caution in providing a reasonably safe place for plaintiff to work, but that it negligently provided a table too high for plaintiff to work at, and wrongfully and negligently provided a wooden box about 12 by 14 inches in size for him to stand on, and wrongfully allowed the box to become greasy and slippery. More than a year afterward an additional count was filed, charging that although the defendant was notified that the box was unsuitable and unsafe, and promised it should be at once repaired or rendered safe, or one more suitable and heavier provided, and thereby caused the plaintiff to continue in his said employment, nevertheless defendant negligently permitted said box to remain in use and negligently allowed it to become greasy, etc.

F. J. CANTY, for plaintiff in error; J. C. M. CLOW, of counsel.

SCOTT O. CAVETTE, THEODORE G. CASE and JOHN T. MURRAY, for defendant in error; A. W. BROWNE, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Plaintiff in error, defendant below, urges that it was not guilty of any negligence which can be considered the proximate cause of the injury, and that plaintiff assumed the risk and was himself guilty of negligence.

In behalf of defendant in error, plaintiff in the trial court, it is said in argument that the alleged "liability of the defendant is predicated upon the duty of the master to furnish a reasonably safe place and surroundings for its employee to work," while engaged in operating a dangerous machine containing revolving knives, and also "upon the failure of the master upon complaint of the employee to carry out his promise to remedy the defects and make the place of work more secure."

Plaintiff's account of the way in which the accident occurred is in brief that as he stood on the box and was feeding the machine, "the box tipped over." He "fell against the machine," his left arm went into the hole and was caught by the worm and cutting machinery beneath. The proximate cause of the injury was, therefore, the tipping of the box upon which the plaintiff was standing. His hand and arm apparently went into the hopper, because by the tipping of the box he lost his balance and fell forward toward the machine. The cause of the tipping does not appear. Whether plaintiff stepped on one edge, or leaned so far forward as to push it out from under him, we are left to conjecture. The floor and the box had become littered with bits of lard and grease in consequence of the nature of the work. In this the evidence does not tend to show negligence of the defendant. It appears from the testimony of the plaintiff that after the work of the day

was over every thing was cleaned up, and in the morning
when the work of another day began, the floor was clean
and the grease entirely removed.   Salt was provided for
use during the day as the floor became slippery by reason
of the accumulating grease.   It was customary to use it
"to keep the men from slipping," and there is evidence that
it was so used on the floor and box.   The danger so far
as appears was from the cutting or grinding apparatus,
which was at least four inches below the surface of the table
or mouth of the hopper.   To reach it one must put his hand
down into the hopper.

It is contended in behalf of the plaintiff that the box
was not a reasonably safe appliance.   One of the plaintiff's
witnesses who testifies that he worked three years at the
same machine, says that the same box was there all that
time.   This is not disputed.   There is evidence tending to
show that the movement of the machinery shook to some
extent the floor and surroundings.   It is apparent the ac-
cident might have happened in the same way had the box
been firmly fixed and the plaintiff slipped while standing on
it or on a fixed platform.   From its long-continued use, so
far as appears without question or complaint up to the time
of the accident, it is evident that danger was not anticipated
from the box.   It was apparently regarded as affording a
reasonably safe place upon which a workman might stand
when operating the machine.

If, however, any of the appliances can be fairly regarded
as not reasonably safe, or as doubtful in that respect, and
assuming that the evidence warranted the jury in so find-
ing, nevertheless the conditions were open and obvious.
Plaintiff had worked there at different times for a number
of months.   He was familiar with the entire situation.   He
impliedly contracted, therefore, not only to work under the
conditions as they existed, but also to assume the risk.
Kleinnest v. Kunhardt, 35 N. E. Rep. (Mass.), 458-459;
C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492-497.   The
case of Cudahy Packing Co. v. Marcan, 106 Fed. Rep. 645,
is very similar in its facts to the case at bar.   There the

plaintiff, a minor, was likewise injured in a hashing ma-
chine. He also had been accustomed to use a box upon
which to stand. This having been broken, he found a chop-
ping block which he used in its stead. He received injuries
by the slipping of this block, as did appellee by the tipping
of the box. No salt was there used upon the floor as it was
used in the case at bar. The court held (p. 647) that the
"risks and dangers were so simple, open, obvious that the
conclusion is inevitable that he impliedly contracted, not
only to work in this place, but also to assume the danger
of accidents arising from the wet, greasy and slippery floor,
and the revolving cylinders of the chopping machine"; that
there was no substantial evidence upon which the jury could
properly render a verdict in favor of the plaintiff in the
case, and it was the duty of the court below to direct them
to return a verdict against him. In the case at bar there
is no question but that the employee knew of the alleged
defect, and his means of knowledge were at least equal to
those of the master's representatives. Where the danger is
obvious to a person of ordinary intelligence the law will
charge him with the knowledge of it. L. E. & W. R. R. Co.
v. Wilson, 189 Ill. 89-99. By entering upon and continu-
ing in the employment plaintiff assumed these apparent,
open and ordinary risks, and no negligence can be charged
against the master for failure to remove them.

In the amended declaration, however, filed more than a
year after the original count, there is an averment that the
defendant was "notified that said box was unsuitable for
that purpose and an unsafe and an improper thing for the
plaintiff to stand upon," and that the defendant promised
to render it safe or provide "a more suitable and heavier
box." The testimony of the plaintiff, the only evidence on
this point, is: "I did not notice anything about the box
besides its being slippery, but she was small. It was loose.
I told the foreman to fix that. He said he would fix it,"
and plaintiff says this promise was repeated. The foreman
denies this. There is, however, no evidence tending to show
that the box was in any respect less suitable than it had

been during the weeks and months when the plaintiff had been using it just as he was doing at the time of the accident. It is at least curious that this alleged request to the foreman should have been made only a few days before the accident for the first time. The plaintiff says he did not complain to the preceding foreman. However that may be, the only thing of which plaintiff says he complained was that the box "was loose," and this is what he states the foreman promised to "fix." How it was to be fixed or what was to be done according to this alleged promise, is in no way indicated. The continued daily use with safety for a long period of an appliance or machine not obviously defective or dangerous controverts any imputation of carelessness or negligence in such use. There is no evidence tending to show that the plaintiff was induced to continue his work by this alleged promise to "fix" the loose box. It had always been loose and movable. If that was a defect, it had always existed, and plaintiff had been familiar with it from the beginning. There is no evidence to sustain the alleged promise to substitute a box that was heavier. In Webster Manf'g Co. v. Nisbett, 205 Ill. 273-277, it is held that the express promise of the master to make needed repairs when notified of defects which render a service more hazardous permits the servant to continue in his employment a reasonable time without being guilty of negligence, unless where the danger is so imminent that no prudent man would so continue it. "But the rule which exempts an employee from assuming the risk where a promise to repair is made, is designed for the benefit of those engaged in work where machinery and materials are used of which the employee has little knowledge. It does not apply to ordinary labor, which only requires the use of implements with which the employee is familiar." In such case the fact that an employee asks for another implement does not render the master responsible if an accident occurs. See Meador v. Lake Shore & M. S. Ry. Co., 138 Ind., 209. No implement could be simpler than a box upon which to stand. It is in very common use for such purpose. Plain-

tiff knew as well as the foreman or master under what conditions it would tip over or slip from under him, and if he continued to work, he assumed that risk. To hold the master liable where, as here, an alleged promise of the foreman to replace or "fix" an implement so simple in its use as a box used to stand on, is relied upon to fix liability, would extend the rule of *respondeat superior* beyond reasonable limits, and apply it as never intended. Cases cited by plaintiff's attorneys, where a promise has been made to repair a defective scaffold, are not in point.

Complaint is made of certain instructions given at request of plaintiff's attorneys, but for the reasons indicated and in view of the conclusion we are compelled to reach, we deem it unnecessary to consider the objections urged. We are not unmindful of the serious nature of the plaintiff's injury, but under the facts in evidence and the law applicable, the judgment in his favor cannot be sustained. It must, therefore, be reversed with a finding of facts.

*Reversed.*