FRANK RAHM, Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, March 2, 1908.

1. MASTER AND SERVANT: Negligence: Lex loci Delicti: Action in Missouri. Where a servant is injured by the master's negligence in another State in order to recover in the courts of this State he must show that the laws of the State in which the accident occurred afforded him a cause of action; and if there be no cause of action there, he has none here.

2. ———: ———: Assumption of Risk: Illinois Common Law: Defective Appliance. Under the Illinois common law a servant takes upon himself the risks arising from defective tools and machinery, if knowing thereof, he voluntarily continues in the service without objection; and where the defective tool is a simple appliance, neither objection of the servant to using it nor the promise of the master to repair or replace it will create a liability of the master to respond in damages for an injury caused by such defect.

3. ———: Defective Appliance: Hammer: Illinois Common Law. Under the Illinois Common law a bolt punch hammer is a simple tool and its use in driving a bolt out of an engine wheel is not a work calling for the exercise of skill and training; and where the head of the hammer is mashed the defect is as obvious to the servant as to the master.

Appeal from Daviess Circuit Court.—*Hon. Joshua W. Alexander*, Judge.

AFFIRMED.

*Platt Hubbell* and *George Hubbell* for appellant.

(1) The right of trial by jury is a constitutional right. The lower court deprived the plaintiff of the

right of trial by jury. Ladd v. Williams, 104 Mo. App. 397; Jones v. Railroad, 32 L. Ed. 480, 128 U. S. 443, 9 Sup. Ct. 118; Supp. Fed. Stat. Ann. 1907, p. 68, sec. 2. Act June 11, 1906, c. 3073, sec. 2, 34 Stat. 232; Dean v. Woodenware Works, 106 Mo. App. 177; James v. Mut. R. F. L., 148 Mo. 16; Ballard v. Railway, 51 Mo. App. 457; Grace v. Railway, 156 Mo. 301; Moore v. Transit Co., 194 Mo. 9; Bender v. Railway, 137 Mo. 244; O'Hare v. Railway, 95 Mo. 667. The same rule of decision obtains in Illinois. L. M. & L. v. Cook, 222 Ill. 206; same case, 78 N. E. 599. (2) The rights of the parties are governed by the common law. (3) The common law of Illinois is presumed to be the same as the common law of Missouri. Slaughter v. Railroad, 116 Mo. 277; Price v. Clevenger, 99 Mo. App. 542. (4) Plaintiff's instructions correctly declare the law of this case—and this cause should be submitted to the jury under plaintiff's instructions. Booth v. Air Line Co., 76 Mo. App. 516; Lawrence v. Ice Co., 93 S. W. 899; Bonding Co. v. Mills, 152 Fed. 107; Devore v. Railway, 86 Mo. App. 429; Boiler & Mfg. Co. v. Parks, 78 N. E. 811; N. E. & S. Co. v. McCorkle, 76 N. E. 843, 219 Ill. 557; W. & F. v. Kapaczynski, 75 N. E. 751; 218 Ill. 149; H. E. F. Co. v. Clark, 214 Ill. 399; Hansell-Elcock Foundry Co. v. Clark, 73 N. E. 789; Coal Co. v. Campbell, 71 N. E. 863, 211 Ill. 216.

*M. A. Low* and *E. M. Harber* for respondent.

(1) The injury of plaintiff occurring in the State of Illinois, his right to recover therefor is to be determined by the laws of that State and such laws cannot be evaded and recovery had by bringing suit in this State when no liability exists against the defendant for such injury in the State of Illinois. Williams v. Railway, 106 Mo. App. 61; Fogarty v. Railway, 180 Mo. 490; Carson v. Smith, 133 Mo. 606; Bridge v. Railway, 27 S. C. 456, 13 Am. St. 653 and note; Railway v. Bab-

cock, 154 U. S. 190, 14 Sup. 978; Railway v. Carroll, 97 Ala. 126, 38 Am. St. 163; Railway v. Jackson, 89 Tex. 107, 59 Am. St. 28; Railway v. Reed, 158 Ind. 25, 92 Am. St. 293; Railway v. Jourdan, 34 Am. and Eng. R. Cas., N. S. 728 and note (Ky). (2) Under the law of Illinois, where the tool or appliance complained of is a simple appliance of common use, easily understood, such as here, a common handle punch, the employee cannot recover damages for any injury happening him in the use thereof; though such tool or appliance is in a defective condition and he has made complaint thereof and it's repair or replacement has been promised, and he directed to proceed to use such appliance until such repair or replacement has been made, a case directly in point and decisive of the case at bar is that of Webster Mfg. Co. v. Nesbitt, 205 Ill. 275, 68 N. E. 936; Wire Co. v. Maxwell, 116 Ill. App. 296; Bowen v. Railway, 117 Ill. App. 9; Packing Co. v. Kertowicz, 119 Ill. App. 488. (3) Under the laws of Illinois, it is also incumbent upon the employee seeking recovery against the employer for injuries happening by reason of being provided with unsafe appliances or place of work, to establish: First, that the appliance or place was defective; second, that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect, and had not equal means of knowing with the master. Cases in point: Coal Co. v. Barringer, 218 Ill. 327, 75 N. E. 900 and cases cited; Harvesting Machine Co. v. Zakewski, 220 Ill. 522, 77 N. E. 147. (4) While concerned as to the law of Illinois alone as applicable to the facts of this case, and of this, a reading of the foregoing cases will show there can be no reasonable grounds for difference. We believe the rule is now firmly established by the large majority of the most respectable and learned courts of the land; that no employee, much less a skilled machinist of eighteen years' experience, in the mechanical

department of the various railroads of the country, will be permitted to recover damages for injuries received in the use of the ordinary and simplest possible appliance in constant use, the danger in the use of which he fully understands or which is easily comprehended by him. Marsh v. Chickering, 101 N. Y. 396; Webster Mfg. Co. v. Nesbitt, supra; Bowen v. Railway, supra; Packing Co. v. Kretowicz, supra; Coal Co. v. Barringer, supra; Harv. Mach. Co. v. Zakewski, supra; Railway v. Phuiney, 77 N. E. 296; Meador v. Railway, 138 Ind. 384, 46 Am. St. 384 and note; Vanderpool v. Partridge (Neb.), 112 N. W. 318; Bottling Co. v. Theiler (Neb.), 80 N. W. 821; Railway v. Weikal (Kan.), 84 Pac. 720; Kaschman v. Ash.(Minn.), 108 N. W. 514; Olson v. Lumber Co., 102 Wis. 264; Stark v. Cooperage Co. (Wis.), 106 N. W. 841; Wachsmith v. Shaw Electric Crane Co., 118 Mich. 275; Damper v. Lewis, 113 Mich. 144; Heuggler v. Cohn, 68 N. J. L. 240; O'Brien v. Railway (Tex. Civ. App.), 82 S. W. 319; Nichols v. Glass Co., 126 Mo. 65; Anderson v. Box Co., 103 Mo. App. 382; Posh v. Railway, 121 Mo. App. 562; Goreagon v. Iron Works, 158 Mass. 596; Martin v. Highland Co., 128 N. C. 264, 83 Am. St. 671 and note; Railway v. Blackman, 39 So. 479 (Miss.); Railway v. Kellow, 55 Ark. 483; Conley v. Express Co., 87 Me. 352; Lynn v. Refining Co., 128 Iowa 501; Packing Co. v. Marcon, 106 Fed. 645; Gowan v. Harley, 56 Fed. 973 and cases cited.

JOHNSON, J.—Action by a servant against his master to recover damages alleged to have been caused by the negligence of the master. The injury occurred November 16, 1905, at defendant's machine shops in Silvis, Illinois. Plaintiff, employed as a machinist, was directed by his foreman to remove a bolt from an engine which was undergoing repairs. The bolt, placed inside of the left forward driving wheel and used to support

three frames and a driving box binder, was about twenty-seven inches in length, stood in a vertical position, and was so firm in its hole that great force was required to drive it therefrom. Point is made by counsel for plaintiff that he was not an experienced machinist, but we think his own testimony shows conclusively that he was an experienced mechanic and began his task in a proper manner. The tools used by him and his helper were a bolt hammer and a sledge. Before using them, plaintiff drilled a hole in the center of the bolt in order to loosen it somewhat and thus make it more responsive to the blows of the hammer. The hammer was made of forged or cast steel, flattened at the top to receive blows from the sledge and tapered at the lower end into a punch shaped projection three or four inches in length and perhaps three-fourths of an inch in diameter, designed to follow the bolt into the hole as it was being driven out. The hammer was held in place by means of a wooden handle two feet long adjusted in the manner of an ordinary hand hammer. It appears that the hammer used on the occasion in question had been in use for sometime and that its top being of softer metal than the sledge had become battered and mashed. The helper held it in place while plaintiff wielded the sledge. The last blow struck caused a particle of steel to sliver from its head and strike plaintiff in the eye, destroying the sight.

The specific negligence alleged is that "defendant then and there and thereby negligently failed to furnish plaintiff with a reasonably safe appliance, tool and equipment for the doing of said work; and, then and there and thereby negligently failed to furnish plaintiff with a reasonably safe bolt punch (hammer) for said work; and defendant, knowing of such defective condition of said bolt punch, then and there negligently required and ordered the plaintiff to do said work with a bolt punch that was not reasonably safe. . . . Said

bolt punch was defective in that part of said bolt punch
in and around the head thereof, and which part it was
necessary to strike with the sledge aforesaid in driving
and extracting said bolt, was old, battered, broken and
slivered and was then and thereby not reasonably safe
and suitable for the purpose for which plaintiff was
required to use it."

The answer contains a general denial and a plea
that under the law in force in Illinois at the time of the
injury the risk which culminated in the injury was as-
sumed by plaintiff as a part of his contract of employ-
ment; that under said law, plaintiff should be held
guilty of contributory negligence and, as "he has no
right of action or cause of complaint against it under
the laws of the said State of Illinois, the State wherein
his alleged cause of action accrued," he has none in this
State.

It appears from the evidence that defendant main-
tained a tool room at its shops in charge of a clerk
who issued tools therefrom on application of the work-
men, that plaintiff complained to the clerk of the defec-
tive condition of the hammer at the time it was handed
him, but was told that it was the only hammer avail-
able as others suitable were in the blacksmith shop
being repaired. Plaintiff accepted it with reluctance
but endeavored afterwards to extract the bolt without
using it. While thus at work, his foreman came up
and seeing that no progress was being made "picked up
the bolt punch," according to the testimony of plain-
tiff, "and saw a broken chisel laying on the floor and
picked that up and put it down in the bolt hole and
held the bolt punch on it." Plaintiff struck the hammer
several times with the sledge when the foreman said
"let me try it." He took the sledge from plaintiff and
struck the hammer awhile when someone called him to
other duties and he turned the sledge over to plaintiff

saying "Hurry up, Frank, go ahead and get it out some way."

At the conclusion of the evidence offered by plaintiff, the court instructed the jury as follows: "The court instructs the jury that whatever injury plaintiff received while in the employ of defendant, having been received in the State of Illinois, the question of whether or not plaintiff is entitled to recover of defendant by reason of such injury is by this court to be determined by the laws of the State of Illinois as construed, held and declared by the highest courts of said State, hence the court instructs the jury that under the law and the evidence, plaintiff cannot recover. Hence the verdict must be for the defendant." Thus instructed, the jury returned a verdict for defendant and from the judgment entered thereon, plaintiff appealed.

Plaintiff introduced in evidence a statute in force in Illinois which provides: "That the common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First, excepting the second section of the sixth chapter of 43d Elizabeth, the eighth chapter of 13th Elizabeth, and ninth chapter of 37th Henry Eighth, and which are of a general nature and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." [Ch. 28, p. 460 Hurd's Rev. Stat. Ill., 1905.] And it was stipulated by counsel that "any decision (of Illinois) either party desires to present to the court is here considered and offered and read in evidence, and may be hereafter used in any proceedings in this case."

Counsel for plaintiff argue, in effect, *first,* that the rules and principles of the common law applicable to the relation of master and servant as interpreted by the courts of this State should control the determination

of the questions arising under the contention that the demurrer to the evidence should not have beeen sustained; and, *second,* that should it be held that the law of Illinois, the place where the injury occurred should govern, the pertinent principles of that law have been judicially ascertained and determined by the St. Louis Court of Appeals in Fogus v. Railway, 50 Mo. App. 250, and the decision in that case should be accepted as an adjudication of the subject, nothwithstanding it may be out of harmony with the principles enunciated and applied in later decisions of the courts of last resort in Illinois.

Neither of these positions is tenable. The rule is settled in this State that "in a transitory common law action where suit is brought in a State other than where the injury happened, the interpretation of the common law obtaining in the State where the cause of action accrued, the *lex loci* will govern." [Root v. Railway, 195 Mo. 348.] Recently in the case of Chandler v. Railway, 127 Mo. App. 34, we had this precise question before us. The plaintiff, a railroad laborer, was injured in the Indian Territory and brought suit in Missouri to recover damages alleging in his petition that his injury was the direct result of his master's negligence. In our discussion of the subject now under consideration, we said, in part:

"The vital question is, Did plaintiff have a cause of action in the Indian Territory which the courts of that jurisdiction, under their view of the law, would enforce? If he had no cause of action there, certainly he could not acquire one by entering this State. If naked when he came to our border, the mere act of stepping over an imaginary line would not clothe him. His cause of action must be measured not by our own standard but by that fixed by the rules and principles recognized by the courts of the place where he was injured. If there is no law giving him a right of action

in the place where the alleged wrongful act was committed, no action can be maintained here, though the laws of this State would have given him a right of action had the same acts been committed without our boundaries. To hold otherwise would be to say that one State could prescribe rules, no matter how arbitrary, to govern persons and things in another State, and thus contravene the fundamental principles maintained by all nations that every independent State has an exclusive right to regulate persons and things within its own territorial limits and that the laws of the State or country can have no intrinsic force *proprio vigore* except within the territorial limits and jurisdiction of that country." We must go to the latest decisions of the highest tribunals in Illinois to ascertain whether the injury of plaintiff, sustained in the manner detailed in his evidence, would afford him a cause of action which would be enforced in the courts of that State. If he has no cause of action there, he has none here.

We shall assume that the evidence introduced by plaintiff tends to show that he objected to using the defective tool, that the defendant promised to repair it or replace it with another and assured plaintiff that he could use it in safety, but even with these concessions, it is quite clear plaintiff has failed to make out a case to go to the jury under the *lex loci delicti*. The principles defining the reciprocal duties and obligations of master and servant declared by the courts of Illinois thus may be summarized: "By his contract of employment plaintiff assumed all of the ordinary hazards arising from the performance of the duties of his voluntary engagement, and when he learned, as it is admitted he did, that his work had become more dangerous by reason of the defect . . . he had his election to quit the service or assume the risk arising from the defect. A servant not only assumes all the usual and known dangers incident to his employment, but also takes upon

himself the risk arising from defective tools and machinery, if after the employment he knows of the defect and voluntarily continues in the service without objection. The law, however, creates an exception or modification of that rule, where the servant, after acquiring knowledge of a defect, gives notice of the same to the master and the master promises to remedy the defect. . . . By the promise a new relation is created, whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following the promise." [Morden Frog & Crossing Works v. Fries, 81 N. E. (Ill.) 862.] "But the rule which exempts an employee from assuming the risk where a promise to repair is made is designed for the benefit of those engaged in work where machinery and materials are used of which the employee has little knowledge, but it does not apply to ordinary labor which only requires the use of implements with which the employee is entirely familiar." [Webster Mfg. Co. v. Nesbit, 68 N. E. 936.] In the case just cited, the plaintiff, a blacksmith, had been furnished with· a "backing hammer, the face of which had become somewhat chipped and out of repair." He complained to the master who told him to "Go ahead and use it now, and I will fix it, or get someone to fix it. Don't stop that job. I am in a hurry." Afterwards, while plaintiff and a helper were engaged on the work, a small particle of steel flew from one of the hammers as the helper struck a blow, hitting plaintiff in one eye and destroying the sight. The Supreme Court of Illinois said: "The evidence in this record wholly fails to prove, nor does it tend to prove, that the instrument in question, that is the backing hammer, was in any sense intricate or difficult to be understood by plaintiff. It was simply a common hammer, and like an ax, hoe, spade, or other simple tool used in ordinary labor, with which an employee is entirely familiar. There is an

entire absence of proof that the labor required the use of complicated machinery or appliances, but, on the contrary, it affirmatively appears that it was performed with a simple hand hammer.   Nor does the evidence prove, or tend to prove, that the plaintiff did not have as full and complete knowledge of its construction and defects as had his master, the defendant.   Because of the absence of evidence on behalf of plaintiff below establishing or fairly tending to establish these facts, material and essential to his cause of action, it was error to refuse the defendant's request to withdraw the case from the jury."

In the course of the. opinion, the decision of the Court of Appeals of New York in Marsh v. Chickering, 101 N. Y. 396, was quoted with approval, where it was said: "A common laborer who uses agricultural implements while at work upon a farm or in a garden, or one who is employed in any service not requiring great skill and judgment, and who uses the ordinary tools employed in such work, to which he is accustomed, and in regard to which he has perfect knowledge, can hardly be said to have a claim against his employer for negligence if, in using a utensil which he knows to be defective, he is accidentally injured.   It does not rest with the servant to say that the master has superior knowledge, and has thereby imposed upon him.   He fully comprehended that the spade, or the hoe, or the ladder, or the instrument which he employed, was not perfect, and, if he was thereby injured, it was by reason of his own fault and negligence.   The fact that he notified the master of the defect and asked him for another instrument, and the master promised to furnish the same, in such a case, does not render the master responsible if an accident occurs. . . .   A rule imposing such a liability would be far reaching and would extend the principle stated to many of the vocations of life for which it was

never intended. It is one of a just and salutary character, designed for the benefit of employees engaged in work where machinery and materials are used of which they can have but little knowledge, and not for those engaged in ordinary labor, which only requires the use of implements with which they are entirely familiar." Other cases in Illinois of like tenor are as follows: Gunning System v. Lapointe, 212 Ill. 294, 72 N. E. 393; McCormick Machine Co. v. Zakewski, 220 Ill. 522, 77 N. E. 147; Barbed Wire Co. v. Maxwell, 116 Ill. App. 296; Bowen v. Railway, 117 Ill. App. 9; Packing Co. v. Kertowicx, 119 Ill. App. 488; Montgomery Coal Co. v. Barringer, 218 Ill. 327, 75 N. E. 900. The doctrine appears to be firmly established by these cases that the servant takes upon himself the risk arising from defective tools and machinery where, knowing of the defects, he voluntarily continues in service without objection and that where the defective tool is a simple appliance, neither the objection of the servant to using it, nor the promise of the master to repair or replace it will create a liability of the master to respond in damages for an injury caused by such defect.

Further, it cannot be gainsaid that the Supreme Court of Illinois (judging from the reasoning in the opinions we have cited), would classify the defective hammer, in the present case, as a simple tool. The learned counsel for plaintiff points to the fact that it was being used to drive a bolt from its place in an engine as proof that such use was of an intricate nature, calling for the exercise of skill and training. But neither the location of the bolt nor the fact that a bolt was being driven is material to the classification of the tool. It was a simple implement. The practice of driving a hammer or chisel with a sledge is as common as it is simple and requires no special skill. Common laborers in working on the streets, in building and repairing railroads, in quarries and in numerous other activities,

frequently employ it. A mashed hammer or chisel head is a defect as obvious to the servant as to the master and one knows as well as the other that particles of metal are likely to be detached and projected with force when steel strikes steel, particularly where one of the meeting surfaces is worn and battered.

It is manifest from what we have said that the learned trial judge, in sustaining the demurrer to the evidence, rightly construed and applied the laws of Illinois. The judgment is affirmed. All concur.