## THE MONTGOMERY COAL COMPANY

### *v.*

## CORWIN E. BARRINGER.

*Opinion filed October 24, 1905—Rehearing denied Dec. 13, 1905.*

1. MASTER AND SERVANT—*what servant must prove to recover for injury from defect.* To recover for injury from a defect in an appliance or in the place where the servant was working, the servant must prove that the appliance or place was defective, that the master had notice thereof or ought to have had, and that the servant did not know of the defect and had not equal means of knowledge with the master.

2. SAME—*rule as to necessity for appreciating danger from ·defect.* If the danger from a defect known by a servant to exist is such that it cannot be appreciated without special experience and knowledge, proof that the servant knew of the danger must accompany proof of his knowledge of the defect in order to relieve the master from liability for injury; but if the danger is such as any person of ordinary intelligence knows would naturally follow from the defect, knowledge of the defect carries knowledge of the danger, and the risk is assumed.

3. SAME—*when servant is charged with notice of danger.* A servant who knows that there is a hole in the floor of a coal chute of considerable size is charged with notice of the danger of lumps of coal dropping through it and injuring persons working below, and if he is injured when passing under the chute while coal is being dumped, he cannot escape the consequence of his knowledge of the defect by claiming that he had not noticed where the hole was with reference to persons passing underneath the chute.

4. INSTRUCTIONS—*instruction ignoring material defense should be refused.* An instruction in an action against a master for personal injury, which, in effect, directs a verdict for the plaintiff if the jury believe the facts therein stated to have been established, should be refused, where it ignores the question of assumed risk, which was vital to the defense made by the master.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Montgomery county; the Hon. WILLIAM M. FARMER, Judge, presiding.

AMOS MILLER, and LANE & COOPER, for appellant.

JETT & KINDER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case brought by the appellee, against the appellant, to recover damages for a personal injury alleged to have been caused by a lump of coal striking him on the head, which fell through a hole in the bottom of a coal chute, beneath which he was passing with a car loaded with slack from the slack pile to the engine room of the appellant. The declaration contained four counts which averred, in various forms, those facts. The general issue was pleaded, and upon a trial a verdict was rendered in favor of the appellee for $2500, upon which, after overruling a motion for a new trial, the court rendered judgment, which judgment, upon appeal, was affirmed by the Appellate Court for the Third District, and a further appeal has been prosecuted to this court.

The appellee, who was twenty-seven years of age, had been in the employ of the appellant about eight months immediately preceding the injury, which occurred on November 16, 1901. Prior to the day of the injury, for some weeks he had been working as a cager at the upper end of the tower or tipple of appellant's mine, which was about twenty-five feet above the surface of the ground. On the morning of the injury he was directed by his foreman to take the place of one Lyerla, who was sick, and to wheel slack from the slack pile to the engine room, and in so doing it was necessary that he pass under the wagon chute, which ran south from the tower or tipple in a sloping manner to within five or six feet of the ground, and from which coal was loaded from the tower or tipple into wagons placed beneath the lower end of the chute, and beneath which was situated a track from the slack pile to the engine room, along which slack was conveyed in a small car which was propelled by hand. A hole some five or six inches in diameter had been worn through the bottom of the upper end of said coal chute by means of the pit cars, whose contents were dumped into the chute, coming in contact with the bottom of the chute

as the cars were dumped. After appellee had been at work wheeling slack for two or three hours, the contents of a pit car were dumped into the chute, and a piece of coal weighing about a pound fell through said hole and struck appellee upon the head as he passed with a car of slack beneath the chute and fractured his skull. The appellee testified that for some time prior to his injury, and while he was at work upon the tower or tipple, he knew the hole was in the bottom of the chute and that the slack track passed beneath the chute. He said, however, he never observed that the hole was immediately over the track. The testimony of the appellee upon those questions was uncontradicted.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the appellant asked the court to direct the jury to return a verdict in its favor. This the court declined to do, and the action of the court in that regard is assigned as error.

In the case of *Goldie* v. *Werner,* 151 Ill. 551, it was held that in an action upon the case by the servant against the master to recover damages for an injury resulting from defective appliances, which is held to include a safe place in which to work, (*Hess* v. *Rosenthal,* 160 Ill. 621; *Metcalf Co.* v. *Nystedt,* 203 id. 333;) the burden of proof is upon the servant to establish, first, that the appliance or place was defective; second, that the master had notice thereof, or knowledge, or ought to have had; and third, that the servant did not know of the defect and had not equal means of knowing with the master. The rules there announced have been repeatedly approved and re-affirmed by this court, (*Karr Supply Co.* v. *Kroenig,* 167 Ill. 560; *Chicago and Alton Railroad Co.* v. *Scanlan,* 170 id. 106; *Howe* v. *Medaris,* 183 id. 288;) and are the settled law of this State.

As to the first proposition, it is admitted that the floor of the chute was defective. As to the second proposition, there is evidence that the hole had been in the bottom of the chute for two or three months prior to appellee's injury, and

Lyerla testified on two occasions prior to the injury of appellee he called the attention of one Hess, who occupied the position of "top boss" at the mine, to the defective condition of the bottom of the chute. While the statement of Lyerla was denied by Hess, the evidence was sufficient to require the court to submit to the jury the question of whether the appellant had notice of the defect in the bottom of the chute, or ought to have had knowledge thereof by reason of the length of time it had existed.

As to the third proposition, from a careful consideration of all the evidence in the case we are of the opinion the evidence does not tend to show that the appellee did not have notice or knowledge of said defect, but, on the contrary, think the evidence shows he did have knowledge of the defect prior to the time he was injured. It is undisputed he had been at work upon the tower or tipple, dumping coal from loaded pit cars into the chute, for a number of weeks. The cars which he handled were the cars which wore the hole through the bottom of the chute, and upon the trial he admitted he knew, and had known for a number of weeks prior to his injury, that a hole five or six inches in diameter had been worn through and was in the upper end of the bottom of said chute. It was only twenty-five feet from the place where he worked upon the tower or tipple to the ground. The chute ran south from the tower or tipple in a slanting manner to within five or six feet of the ground, and the coal from the lower end of the chute ran into wagons which were driven under that end of the chute, as it was dumped from the pit cars into the chute. The slack pile was located under the lower end of the chute and between the place where the wagons were loaded and the foot of the tower or tipple, and the track over which the car was pushed which contained the slack was located between the slack pile and the foot of the tower or tipple. The appellee knew where the slack pile was located and its distance from the foot of the tower or tipple. He also knew that the slack track ran under the

chute between the slack pile and the foot of the tower or tipple. He was a man of mature years and average intelligence, had worked upon the tower or tipple at the point where the hole was in the bottom of the chute and immediately over the slack track, and while the slack track was in use, for several weeks prior to his injury, and was chargeable with notice that small lumps of coal dumped into said chute were likely to fall through the hole in the bottom of the chute, and if they did they were likely to strike and injure a person standing or passing beneath said chute while engaged in wheeling slack from the slack pile near the end of the chute to the engine room; and appellee has not brought himself within the terms of the third rule announced in the *Goldie case* by the bare statement that prior to his injury he had not observed that the slack track ran immediately below the hole in the chute. The defect in the chute and the location of the track beneath the chute were obvious to any intelligent person, and the appellee could not close his eyes to those facts and then recover damages of the appellant for an injury received by him by reason of his own thoughtlessness or negligence in going beneath the chute at the time coal was being dumped therein.

It is urged, however, that even though the appellee failed to show that he did not have knowledge of the defect, it appears from the evidence he did not appreciate the danger to him arising from the defect in the bottom of the chute at the time he went beneath the chute and was injured, as, when working upon the tower or tipple, he failed to observe the slack track was located immediately beneath the hole in the bottom of the chute, and reliance is placed upon *Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614, and *Hartrich* v. *Hawes,* 202 id. 334. The rule announced in those cases is, that the servant must not only have knowledge of the defect in the appliance or place, but must appreciate the danger to him when using the appliance or working in the place, in order to relieve the master from liability when the servant

has been furnished a defective appliance or is directed to perform service in an unsafe place and is injured. This qualification to the third rule above referred to is a wholesome one in many instances, and should be enforced when the danger from the use of the appliance or the performance of work in an unsafe place is not obvious to the servant from a knowledge of the defect in the appliance or place, but where the defect in the appliance or place is known and the danger is obvious to a man of ordinary intelligence such exception to said rule ought not to be applied. All persons of mature years and ordinary experience, and endowed with their natural faculties, must be held to understand the ordinary laws of nature, such as that water will run down hill, a falling body will strike the ground, etc., and it must be presumed, when such persons have knowledge of obvious defects in appliances or places with or in which they are engaged in performing ordinary labor and with which they are entirely familiar, they will also comprehend the natural and probable results which will follow from a use of such appliance or from working in such place. If, however, the danger which follows from the use of a defective appliance or from working in an unsafe place is such that it requires long experience or a knowledge of intricate machinery or the possession of expert or scientific knowledge in order that the danger may be apparent to the person using the defective appliance or working in the dangerous place, a man without such experience or knowledge will not be presumed to understand or comprehend such danger from knowledge, alone, of the defect in the appliance or place, and in such case a knowledge of the defective condition of the appliance or unsafe character of the place will not defeat a right of recovery unless the servant, in addition to a knowledge of such defect, comprehends the danger to which he is exposed from the use of the appliance or from working in the place. When, however, the defect is obvious and danger necessarily follows from the use of an appliance or from working in an

unsafe place, such as would follow from a person going beneath a chute which had a hole five or six inches in diameter in the bottom, down which small lumps of coal were being dumped, a knowledge of the danger will necessarily be implied from a knowledge of the defective condition of the chute and that lumps of coal are passing down the chute, and the servant injured while thus situated cannot recover.

In *Illinois Steel Co.* v. *Mann,* 170 Ill. 200, an action was brought to recover damages for a personal injury sustained by the plaintiff by reason of his slipping upon a smooth floor, of the condition of which he had knowledge, while attempting to remove an iron paddle from a water trough in which it had been placed to cool. The court, on page 207, said: "The servant has the right to presume that the materials and appliances which are furnished to him in the performance of his duty are sufficient therefor. This rule, however, is not applicable to all cases, and where the servant has equal knowledge with the master and a full knowledge of all existing defects, and more especially in the performance of ordinary labor in which no intricate machinery is involved, the rule is not applicable."

In *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 Ill. 89, the intestate of the plaintiff was killed while attempting to make a coupling as a brakeman upon one of appellant's trains, as it was claimed, by reason of stepping into a hole near the rail, whereby his foot became caught beneath a tie near the rail, which threw him or caused him to fall beneath the wheels, or by reason of his foot becoming entangled in weeds growing upon the railroad company's right of way, whereby he was thrown beneath the car. The brakeman was familiar with the road-bed and other surroundings at the place of the injury, and the claim was made on behalf of the railroad company that by reason of such knowledge he assumed the risk and a recovery could not be had. This court, in considering an instruction which failed to submit the question of assumed risk to the jury, on page 97 said: "It was

the duty of the defendant to exercise ordinary care to provide a reasonably safe switch track as a working place for Wilson and to exercise ordinary care to keep the track in a reasonably safe condition. At the same time, Wilson was held to assume the risks from defects which were known to him, where, as in this case, there had been no promise to repair the defect. If defects are obvious and open to the observation of every person of ordinary intelligence, and the evidence shows that the employee has had full opportunities for such observation, it is sufficient to charge him with knowledge."

In *Webster Manf. Co.* v. *Nisbett,* 205 Ill. 273, the plaintiff sought to recover damages for an injury to his eye, caused by a small particle of steel striking him therein, which flew from a "backing hammer" with which his helper struck a blow, the claim being that the hammer was out of repair, and that the master had, upon complaint, agreed to repair the same prior to the injury. It was held the court erred in failing to withdraw the case from the jury on the ground that the hammer was a common implement, the use of which was well understood by the plaintiff, and that he assumed the risk of being injured while he or his helper was using the same. The court, on page 276, said: "Plaintiff was shown to have had a long experience in the handling of hammers of this character in his business as a blacksmith, and must be held to have assumed the ordinary risks incident to the use of the one in question. The theory and contention of his counsel are, that he did not assume any risk arising from the defect complained of, for the reason that the appellant, by its foreman, promised to repair the hammer or provide a new one for his use. On the other hand, it is contended by counsel for appellant that a promise to repair which will excuse the person injured from assuming the risk incident to his employment does not apply to a simple implement or instrument such as the hammer in question. We think the latter contention is founded upon good reason and authority.

The general rule is, that when the master, on being notified by the servant of defects which render the service he is engaged to perform more hazardous, expressly promises to make the needed repairs, the servant may continue in the employment a reasonable time to permit the performance of the promise without being guilty of negligence, and if any injury results therefrom he may recover, unless he should continue in the employment when the danger is so imminent that no prudent man would undertake to perform the service. The promise of the master in such case relieves the servant from the charge of negligence by continuing in the service. This doctrine we have often recognized. (*Missouri Furnace Co.* v. *Abend*, 107 Ill. 44; *Donley* v. *Dougherty*, 174 id. 582, and cases cited.) But the rule which exempts an employee from assuming the risk where a promise to repair is made is designed for the benefit of those engaged in work where machinery and materials are used of which the employee has little knowledge, but it does not apply to ordinary labor, which only requires the use of implements with which the employee is entirely familiar."

And in *Gunning System* v. *Lapointe*, 212 Ill. 274, the same doctrine is recognized on page 279, where it is said: "The cases where the rule of assumed risk is suspended and the servant exempted from its application under a promise from the master to repair or cure the defect complained of, are those in which particular skill and experience are necessary to know and appreciate the defect and the danger incident thereto or where machinery and materials are used of which the servant can have little knowledge, and not those cases where the servant is engaged in ordinary labor or the tools used are only those of simple construction, with which the servant is as familiar and as fully understands as the master."

The theory upon which those cases proceed is, that when the servant has full and complete knowledge of the condition of the implement which he is using or the place in which he

is doing work, and no special knowledge is required on his part to apprise him of the danger which he incurs while using such implement or working in such place, he will be presumed to have assumed the risk of being injured from the use of such implement or while working in such place, and that in case of injury the master, by reason of such assumption of risk, is not liable. In the case at bar the defect was obvious and open to the observation of every person of ordinary intelligence who would take the pains to observe the conditions which the appellee knew to exist. The appellee had full opportunity for such observation, and, in the language of the *Wilson case*, this was "sufficient to charge him with knowledge" of the defect and its attendant danger, and he was therefore barred, by reason of such knowledge, from a recovery. The peremptory instruction should have been given.

It is also urged that the court misdirected the jury as to the law of the case on behalf of the appellee. But one instruction given on behalf of the appellee need be considered, which reads as follows:

"The court instructs the jury that if you believe, from a preponderance of the evidence, that the plaintiff was an employee of the defendant, then it became and was the duty of the defendant, by its agents, to exercise reasonable care, taking into consideration the nature of its business and instrumentalities employed, to provide and keep in suitable repair and condition the structures, if any, around and under which he was to work; and if you believe, from a preponderance of the evidence, that the plaintiff, while in the exercise of due care, was injured in consequence of neglect on the part of the defendant of its said duty as charged in the plaintiff's declaration, then you should find the defendant guilty."

This instruction wholly ignores the question of assumed risk, which was vital to the appellant's defense, and was, in effect, a direction to find in favor of the appellee, as all the facts found in this instruction, upon which the directed ver-

dict was predicated, were substantially conceded to be true by appellant. The giving of the instruction constituted reversible error. (*Lake Erie and Western Railroad Co.* v. *Wilson, supra.*) Nor was the error cured by the instructions given on behalf of the appellant. (*Illinois Central Railroad Co.* v. *Smith*, 208 Ill. 608; *Illinois Terra Cotta Lumber Co.* v. *Hanley*, 214 id. 243). In *Pardridge* v. *Cutler*, 168 Ill. 504, on page 512, it is said: "The law applicable to different questions may be stated in separate instructions, and the entire law applicable to all the questions involved in a case need not be stated in each. In such case the instructions supplement each other, and if they present the law fairly when viewed as a series, it will be sufficient. But if an instruction directs a verdict for either party, or amounts to such a direction in case the jury shall find certain facts, it must necessarily contain all the facts which will authorize the verdict directed."

The judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*