Vincent C. Mooney, Administrator, Appellee, v. City of Chicago, Appellant.

Gen. No. 14,180.

1. NEGLIGENCE—*what essential to recovery in action for side-walk injury.* In order for the next of kin to recover for the death of their ancestor by reason of an alleged defective sidewalk it must appear by a preponderance of the evidence (1) that the municipality was guilty of the negligence alleged in the declaration; (2) that the deceased was injured by reason or as a result of such negligence; (3) that the deceased was in the exercise of due care at the time of the accident, and (4) that his death was the proximate result of the injury sustained.

2. INSTRUCTIONS—*when need not embody all elements essential to recovery even though concluding with direction.* Where an instruction purports to define the law of one branch of the case, it is not necessary to embody other elements essential to recovery even though it directs a verdict, where other instructions are given which perform that office.

3. INSTRUCTIONS—*when use of word "injured" not misleading.* In an action for death caused by negligence the use of the word "injured" without words indicating that the death of the deceased was caused thereby, *held,* not misleading.

4. RELEASE—*when does not bar right to recover for death caused by alleged wrongful act.* A release made by the plaintiff's intestate in his lifetime discharging one tort-feasor from liability for injuries

sustained does not bar a right of action as against another joint tort-feasor which accrues to the next of kin by virtue of death ensuing from such injury.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed November 6, 1908.

**Statement by the Court.** Appellee, Vincent C. Mooney, as administrator of the estate of Edward Dillon, deceased, brought this action against appellant, City of Chicago, to recover damages for causing the death of said deceased.

The negligence averred in the declaration, consisting of two counts, is that appellant permitted Harrison street, one of its public streets, at the intersection of Clark street therewith, "to remain in a dangerous and unsafe condition, and permitted and allowed several of the paving stones of said street to be removed and to remain absent and missing from said street, and allowed a large and deep hole and depression to exist in said street at said place". Both counts aver that the hole was dangerous and existed long enough before the accident to charge the city with notice thereof, and that Dillon at the time of the accident described was in the exercise of due care for his own safety. The first count alleges that while Dillon was driving a certain wagon and team along Harrison street at the said intersection a wheel of his wagon ran into said hole by means whereof the wagon was broken and Dillon was thrown with great force and violence to the pavement and thereby received injuries which resulted in his death.

The second count differs from the first only in that it avers that the wagon was loaded with barrels, and that Dillon was thrown to the ground and one or more barrels fell upon and struck him and thereby he sustained injuries which resulted in his death.

Both counts allege the survival of a widow and

children of Dillon, his next of kin and make profert of letters of administration. The general issue was pleaded to the declaration.

The testimony produced on the trial by appellee tends to show that at the time of the accident, March 5, 1903, at the northeast corner of the intersection of Clark and Harrison streets, there was an opening in the pavement of the roadway at the curb, through which water was drained from the gutter of the street to the sewer, and about a foot from the sewer inlet there was a hole or depression in the granite pavement produced by the removal of four or five granite blocks. The hole was six inches deep and the blocks around it were loose. When the right rear wheel of the wagon on which the deceased was riding went into the hole it slid into the opening into the sewer. The axle of the wagon broke when the wheel went into the hole in the pavement. The right rear corner of the wagon went down and the deceased was thrown violently upon the sidewalk from the driver's seat where he was sitting. The wagon was a barrel wagon having a box and barrel rack on it, and was about forty feet long.

When the accident happened Dillon was turning the corner out of Harrison street into Clark street. Several barrels fell off the wagon, and one or more fell upon Dillon. The hole had been in the pavement and the blocks around it had been loose for months. The evidence offered for appellee further tended to show that the injuries to Dillon were serious and caused his death.

The testimony offered by appellant tended to show that there was no hole in the pavement at the time of the accident, and that the accident did not cause the death of Dillon. It further tended to prove that the skein of the wagon was worn through at the point where the axle broke, and that it was the defective skein which caused the break, and for that reason Dillon was guilty of negligence which contributed to

the accident; that Dillon in his lifetime had executed to his employer, McKay, a release for his injuries, and consequently appellant was also released from the cause of action involved in this suit.

The jury returned a verdict against appellant for $3,500 and judgment was entered thereon for that amount.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for appellant; EDWARD C. FITCH, of counsel.

FRANK V. CAMPE, for appellee; A. L. GETTYS, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The question is presented, on the errors assigned and relied on for a reversal of the judgment, whether or not the verdict is contrary to the weight of the evidence.

It was necessary, undoubtedly, for appellee, to prove by a preponderance of the evidence (1) that appellant was guilty of the negligence alleged in the declaration; (2) that the deceased was injured by reason of, or as the result of that negligence; (3) that the deceased was in the exercise of due care at the time of the accident; (4) that his death was the proximate result of. the injuries sustained. The question is, does the evidence in the record sustain the averments of the declaration?

The evidence as to the existence of the hole in the pavement is somewhat conflicting. Sullivan testified that he was following the deceased at the time of the accident, and that there was such a hole at the time of the accident, and that it was made by the absence of granite blocks from the pavement, and that the granite blocks around the hole were loose. The witness John T. Dillon says that he was a carriage driver and drove over Harrison street two or three times

every night and he noticed the condition of the pavement at the northeast corner of Harrison and Clark streets; that there was a large hole near the curb, the blocks being out of the street. Hartman testified that he worked for years in a clothing store at the northeast corner of Harrison and Clark streets and saw the accident in question; that there was a hole there in the pavement made by some cobble-stones being removed from the pavement; that he saw several wagons drop into that hole and lose their loads in the same manner that Dillon's wagon did. One was a furniture wagon, the rear wheel of which broke, about two months before the accident in question, and the furniture was thrown upon the sidewalk. The witness Stucke, a shoemaker, was working at the southwest corner of Harrison and Clark streets, saw Dillon's wagon drop into the sewer hole. The stones were loose around the hole and had been loose for months. He saw other wagons fall in there long before Dillon's wagon fell in. He saw many accidents at that corner where the barrel wagon fell, and that a furniture wagon tipped over there about a month before Dillon's wagon and the furniture fell off. The witness Coyne testified that there was a hole and that the paving stones were loose around it, and that he had seen wagons turn over at that place.

On behalf of appellant McKay testified that he examined the place soon after the accident on the same day and there was no hole there. The other witnesses on behalf of appellant on this point were policemen who had traveled their beat for years past this corner, and that although it was their duty to observe and report defects in the streets, they never saw the hole.

In our opinion the verdict of the jury on the question of the negligence of appellant is sustained by the evidence and we cannot say it is against the weight of the evidence and ought to be set aside.

The evidence shows that the skein of the axle around which the right rear wheel revolved was worn through

and the axle was thereby weakened where it broke when the wheel went into the hole in the pavement. And the witness McKay was permitted to testify to his conclusion that the breaking of the axle was due to the defective skein. At the time of the accident it was daylight.

Appellant, on this evidence, bases a contention that the deceased was guilty of contributory negligence in that he ought to have seen the hole and avoided it, and as an experienced teamster he well knew the jolts and jars to which his wagon would be subjected in passing over defects in the pavement, and yet he loaded heavily his wagon with a skein worn out, and drove his wagon along the streets without avoiding the hole in the pavement.

We are not inclined to hold that the verdict was against the weight of the evidence on this question. There are good grounds for placing little reliance on the testimony of McKay in this case; and as to whether Dillon ought to have seen the hole and avoided it under the circumstances was a question for the jury to determine in the first instance, and we find no reason in the record for arriving at a different conclusion from that of the jury.

What was the proximate cause of Dillon's death was a controverted question on the trial of the case. There is evidence in the record given by Bridget Dillon, his widow, by John T. Dillon, his brother, by Coyne, who knew him seven or eight years, and by Biddle, who knew him about fifteen years, that before the accident he was a stout, healthy man and weighed about two hundred pounds; that he never had any medical attendance, and never complained about his back or kidneys. The testimony is that at the time of the accident Dillon sustained a compound fracture of the right leg. The verdict of the coroner's jury found that he died from degeneration of his vital parts, complicated by a compound fracture of the right leg. There is medical testimony to the effect

that at the time of his death he was suffering from the compound fracture, a dislocation of the right ankle, and shock; that the fracture did not heal at all and infection or blood poisoning had set in, and his death resulted therefrom. Dr. Lewke, coroner's physician, testified that he examined deceased after death and he found the ununited fracture of the right leg, a fatty heart and liver, and enlarged spleen and enlarged and fatty kidneys. He testified that septic infection might produce this condition; that poisons coming from the wound might travel through the blood, pass through the liver and heart and cause a destruction of the tissues and the tissues are then replaced by fat cells, that is the usual process in the body; that this will take place rapidly, as soon as two weeks. From the time of the fracture of the leg, to the death of the deceased, was two weeks and three days. And further, Dr. Lewke testified that Dillon died of fatty degeneration of the heart and kidneys, complicated with the compound fracture of his right leg; that both conditions were factors producing his death. The witness could not give the direct cause which produced Dillon's death because he did not know what his history and condition were before the injury, but when he was given Dillon's previous history and condition according to the evidence and assuming these to be true, he stated that the death was caused by septicemia due to a compound fracture of the leg.

Dr. Hamill's testimony tends to show that septicemia caused the death.

Upon a consideration of all the testimony and the circumstances of the case bearing upon this question we are of opinion that the evidence shows that the death of Dillon was the proximate result of the injuries sustained in the accident in question.

Our conclusions upon the proofs made in the case on the different points necessary to be covered by the evidence in order to entitle appellee to recover, log-

ically and necessarily dispose of the contention of appellant that the verdict is contrary to the weight of the evidence, adversely to that contention.

At the request of appellee the court gave to the jury what is known in this case as instruction No. 6. It is in the following terms:

"The court instructs the jury that it is not necessary to a recovery in a case of this character that the evidence should show actual notice to the City of Chicago of the defective condition of the street, if you believe from the evidence that it was defective. If the jury believes from the evidence that the street in question where the plaintiff is alleged to have been injured was out of repair at the time, and had been out of repair for a considerable length of time before said injury is alleged to have occurred for so long a time that the city authorities, by the use of ordinary care on their part, would have known of the defective condition of said street in time before the accident in question, by the exercise of ordinary care to have repaired the same, then notice of such condition of said street may be presumed, and if the jury believe from the evidence in this case that the street where the alleged injury is said to have occurred was out of repair, and was in an unsafe condition to travel upon at the time of alleged injury, and had been so out of repair and in an unsafe condition for a considerable length of time before said injury is alleged to have occurred, so that the city authorities, by the use of ordinary care on their part, might have known of the condition of said street in time to have repaired the same before said injury and did not repair the same, and that the intestate, while driving over said street on the 5th day of May, 1903, one of the wheels of the wagon which he was on fell into a hole in said street and he was thereby injured, and if you further believe from the evidence that the intestate was, at and immediately before the time of said injury, in the exercise of reasonable care for his own safety, then you will find the defendant guilty."

Appellant criticises this instruction and claims that it is erroneous because it directs the jury to find the

defendant guilty, if, after finding the facts which are supposed to constitute the negligence of appellant, they find Dillon was injured, and says nothing in regard to such injury causing Dillon's death. The contention is that for the mere injury appellee could not recover in this action, and therefore, the instruction submits the case to the jury on a false issue. Montgomery Coal Co. v. Barringer, 218 Ill. 327; Illinois I. & M. Co. v. Weber, 196 *id.* 526; and I. C. R. R. Co. v. Smith, 208 *id.* 608; and City of Chicago v. Sutton, No. 13369 in this court (not reported) are cited to the effect that if an instruction directs a verdict for either party or amounts to such direction in case the jury find certain facts, it must necessarily contain all the facts which will authorize the verdict directed; and as it directs a verdict it must be considered by itself—it is not supplemented by the other instructions given.

A careful examination of the instruction before us shows that it is directed to the question of notice to the city, and what constitutes such notice, of the condition of the street. Upon that subject there is no claim that the law is not correctly stated. In order to apply the law to the evidence in the case it was proper to state in the instruction certain elements in the case shown by the evidence upon which it became necessary for the jury to consider the question of notice. This we think is the purport and scope of the instruction. In Pardridge v. Cutler, 168 Ill. 504, the instruction under consideration by the court undertook to review the whole of the evidence and omitted the defendant's evidence which went to the merits of the case. But where an instruction, as in this case, purports to define the law of one branch of the case we do not think it is necessary to embody every element essential to a recovery, even though it directs a verdict, where other instructions are given which perform that office.

In Judy v. Sterrett, 153 Ill. 94, an instruction was given on the subject of a contract to marry which fixed no definite time for its performance. The mani-

fest purpose of the instruction was to inform the jury that the law would presume the contract was to be performed within a reasonable time, and that under such a contract to marry within a reasonable time or on request the request need not be made by the plaintiff herself, but might be made through an authorized agent. The instruction closed with a direction that if the jury found that anyone authorized by the plaintiff for that purpose had called upon the defendant and requested him to marry the plaintiff, and he refused or neglected to do so, then they should find the issues for the plaintiff. The court in commenting upon the instruction said at page 100: "It is not necessary that an instruction intended to serve some particular office, or to define the law of some particular branch of the case, should have embodied in it every fact or element essential to sustain the action (citing authorities). It is sufficient if the jury were informed in other instructions what was required to constitute a valid subsisting contract of marriage." It is true the ground of objection there urged was that if submitted to the jury the question of law as to whether or not there was "a valid subsisting contract of marriage", but the principle of the rule stated applies to the instruction under consideration here.

Furthermore, this action is for the recovery of damages for the benefit of the next of kin for their financial or pecuniary loss by the death of Dillon. The jury must be presumed to have known when the instruction was given to them what the action was for, and that it was not for the injury which occasioned his death. They knew this both from the declaration and other instructions given them. Hence they could not have been misled by the use of the word "injured" without words indicating that the death of the deceased was caused thereby. We do not think the error pointed out was harmful.

It is urged that this instruction and instruction No. 5 given by the court are defective and erroneous in

that they direct a verdict, but wholly ignore a material element in the case—the release or satisfaction given by Dillon, the deceased, to McKay, his employer, covering all claims on account of the injury sustained.

In connection with the testimony of James McKay, Dillon's employer at the time of his injury, appellant offered in evidence a release or satisfaction signed by deceased, dated May 13, 1903, to James McKay, purporting to release all claims on account of the injuries he had received. A release of appellant as a joint wrongdoer, of the cause of action sued on in this case, is claimed through this instrument.

This contention involves a misapprehension of the claims covered by the release, or of the cause of action on which this suit is based. That release or satisfaction settled and discharged all claims which Dillon had against McKay, and, we will assume, against appellant for the injury sustained by him through the negligence of McKay, or appellant by which he was injured. But, Dillon did not in his lifetime have the claim or cause of action here involved which arose for the first time at his death in favor of his widow and next of kin, and did not have the right or the power to release and discharge it. It is a cause of action unknown to the common law, and was first created in this State by the act of the general assembly, approved February 12, 1853. A full exposition of this statute, its objects and purposes, and the nature and measure of damages which may be recovered under it, are given in City of Chicago v. Major, 18 Ill. 349; Chicago & Rock I. R. R. Co. v. Morris, 26 *id.* 400, and Maney v. C. B. & Q. R. R. Co., 49 Ill. App. 105. It follows, therefore, that the claim or cause of action released or satisfied by the McKay document was an entirely different claim or cause of action from the statutory cause of action involved in this case, and the release had no relation to this case, and was erroneously admitted in evidence and was properly ignored in the instructions.

We find no reversible error in the rulings of the court in admitting the testimony of Dr. Hamill as to the cause of Dillon's death. We do not think it was error to overrule the objection to the hypothetical question put to Dr. Lewke calling for his opinion as to the cause of death.

The judgment is not excessive, we think, under the evidence. The other contentions of appellant made in argument are answered by what we have already said. We find no fatal error in the record, and the judgment is affirmed.

*Affirmed.*