## Cornelius Collins, Appellee, v. Western Electric Company, Appellant.

### Gen. No. 17,073.

1. Master and servant—*safe appliances.* Where defendant furnishes planks to be used by plaintiff, a painter in its employ, it is not bound to furnish an absolutely safe plank, its duty being fulfilled if it uses reasonable care to furnish a reasonably safe plank.

2. Master and servant—*assumed risk where scaffold is already in position.* The fact that plaintiff, a painter employed by defendant, is ordered to work on a scaffold already in position, does not relieve him from the assumption of risk.

3. Master and servant—*simple appliances.* A plank and stepladders used by plaintiff in defendant's employ are simple appliances the danger from the use of which the servant assumes.

Appeal from the Superior Court of Cook county; the Hon. Robert W. Wright, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed with finding of fact. Opinion filed March 4, 1913.

Holt, Wheeler & Sidley, for appellant.

Horton, Wickett, Miller & Meier, for appellee; John H. Miller, of counsel.

Mr. Justice F. A. Smith delivered the opinion of the court.

Appellee, Cornelius Collins, hereinafter called plaintiff, recovered judgment in the Superior Court against appellant, Western Electric Company, hereinafter called defendant, for damages for personal injuries alleged to have been sustained November 30, 1906, while working for defendant as a painter.

The declaration originally consisted of four counts. The second count was withdrawn from the consideration of the jury by the court. The first, third and fourth counts charged the defendant with failure to furnish plaintiff a reasonably safe place to work and

negligence in furnishing a plank which was defective by reason of a knot and a cross-grained portion or section.

Plaintiff was fifty years of age and a competent painter of thirty years' experience. At the time of his alleged injury he was in the employ of defendant as a painter, calciminer and whitewasher, and had been so employed for about a month as a member of a gang of ten or fifteen men engaged in general work about the defendant's premises. On November 30, 1906, the gang, including the plaintiff, were working on the eighth floor of defendant's building, whitewashing the ceiling of the room. In performing the work, the men stood upon scaffolding formed of planks strung on stepladders. The planks were of various lengths—10, 12, 14 and 16 feet. They were furnished by the defendant and it was the custom of the men in the gang, in constructing their scaffolding, to move them forward in the room from time to time and change their position as the work progressed. Plaintiff began the whitewashing work sometime between 7:30 and 9:00 in the morning of November 30th. About 3:30 in the afternoon of that day, the plank on which he and a fellow-laborer named Menth were working, broke under them and plaintiff fell to the floor, alighting upon his heels, receiving injuries causing, as he claimed, a flat-footed condition in both feet.

The theory of the plaintiff's case, as developed in the evidence, was that the plank which broke under the plaintiff in the afternoon was the same plank which cracked in the morning while the witnesses Gouhle and Frank Carlstrom were working upon it. It appears from the evidence that a plank upon which these men were working had cracked in the morning, and that the assistant foreman, Gearhart, had an employe named Heckler place a stepladder beneath the plank in order to support it at the point where it had cracked. But it also appears that the plank which cracked in the morning was removed shortly after it

proved defective and placed upon the elevator and taken to a scrap room on the second floor of the building. Plaintiff's theory of the case involves the alleged fact that the plank was again removed from the scrap room and taken back to the room on the eighth floor of the building where the whitewashing was being done. This theory of the plaintiff is relied upon to bring to the notice of the defendant the defective condition of the plank. In our opinion the manifest weight of the evidence is that the plank which cracked in the morning was removed to the scrap room located on the second floor and was never returned to the eighth floor where the work was being done and the alleged injury sustained. In other words, the clear weight of the evidence is that the plank which broke under the plaintiff in the afternoon was not the same plank that cracked in the morning.

The preponderance of the evidence shows that in the morning when the gang commenced work they selected from a pile of planks such as they desired for use on the stepladders and began stretching the planks upon the stepladders in the aisles between the machines located on that floor, and as the work progressed, the painters and calciminers shifted their stepladders and planks; that the planks and ladders were constantly being moved forward by the painters who were working upon them. The plaintiff testified that it was his custom, whenever he got upon a plank, to make an inspection of it for his own safety; that before going upon the plank which broke with him he saw that it rested fairly upon the stepladders; that he tested its strength by walking across it and by observing its condition, and that there was no rock or giving away in the plank when he walked across it, nor any features about the plank which suggested that it might be dangerous and that this plank looked like a good and safe plank. Defendant was not obliged to furnish the plaintiff with an absolutely safe plank. Its duty was fulfilled if it used reasonable care to furnish the plaintiff with a reasonably safe plank. It was not an

insurer of the safety of the plaintiff while he was working upon the planks furnished by it. The plank in question was an old plank which had been used for sometime and was covered more or less with calcimine. The plaintiff claims that he was ordered to work on this particular plank, and at the time the order was given the plank was already in position. This order is denied by his foreman, but if given it would not relieve him from the assumption of the risk incident to working upon the plank. The order in no way misled the plaintiff, for it was such an order as was usually given in the employment in which the plaintiff was engaged. Republic Iron & Steel Co. v. Lee, 237 Ill. 246; Kolp v. Decatur R. & L. Co., 145 Ill. App. 645. It appears from the evidence, we think, that the plaintiff inspected the plank before using it and had better opportunities to know its condition than the defendant. If it contained such a knot or such a breakage at any point as was testified to by the plaintiff, it must have been obvious to the plaintiff and to the man who was on the plank with him. The plank and the stepladders upon which it rested composed a simple appliance with everything about it open and obvious to the most casual inspection, and we think it clearly falls within the doctrine of simple appliances, the danger from the use of which the servant assumes. Webster Mfg. Co. v. Nisbett, 205 Ill. 273; Dauchy Iron Works v. Nevin, 130 Ill. App. 475.

In our opinion the evidence in the case fails to prove negligence on the part of the defendant, and it clearly shows that the plaintiff assumed the risks of his employment.

In view of our conclusion above stated it is unnecessary for us to consider the other grounds relied upon for reversal of the judgment.

The judgment is reversed with a finding of fact.

*Reversed with finding of fact.*